**FILED**

Lucinda B. Rauback, Clerk
**United States Bankruptcy Court**
**Augusta, Georgia**
**By jpayton at 1:54 pm, Jan 16, 2013**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | |
|---|---|
| IN RE:   ) | Chapter 11 Case |
| ) | Number <u>11-30021</u> |
| WILLIAM M. FOSTER, JR.,   ) | |
| ) | |
| Debtor   ) | |
| ───────────────────────── ) | |

## OPINION AND ORDER

Before the Court are cross motions for summary judgment on William M. Foster, Jr.'s ("Debtor" or "Foster") Objection to the Claim of Wilmington Plantation, LLC ("Wilmington Plantation"). For the foregoing reasons the parties' respective motions for summary judgment are denied.

## UNDISPUTED FACTS

This dispute centers around the creation and development of Wilmington Plantation Condominium on Wilmington Island located in Chatham County, Georgia and the ownership of various portions of the property. As a way of background, Wilmington Plantation Condominium contains approximately 19.846 acres which can be conceptually divided into two areas of land. In the center of the 19.846 acres is a multi-story old historic hotel building containing developed condominium units previously sold by Debtor. Surrounding the center

property is about 10 acres of undeveloped land. It is this surrounding land that is at the heart of the dispute between Wilmington Plantation and Debtor. Under the condominium declaration, Debtor purportedly placed the entire 19.846 acres into the condominium which purported caused him to be unable to properly convey title to the property Wilmington Plantation.

Before entering into the sales contract with Wilmington Plantation, Debtor, as Declarant, executed a Declaration of Condominium (the "Declaration") covering the entire 19.846 acre site. Dckt. No. 485, Ex. No. 4. The Declaration was filed with the Clerk of the Superior Court of Chatham County on December 5, 2002 and recorded in Deed Book 243 V, Page 688. Exhibit A to the Declaration contains the following description of the Property:

> All that certain tract or parcel of land containing 19.846 acres of high land and being known as a portion of lots 37, 38, and 39 of the former Walthour Tract, General Oglethorpe Hotel Site, Chatham County, 5th G.M. District, Wilmington Island State of Georgia, upon a map or plat prepared for William M. Foster, Chicago Title Insurance Company, Exchange Bank, By John S. Kern, Dated May 5, 1998 and recorded in plat record book 15P, Folio 58 of the Chatham County Records, express reference is hereby made to the above-stated plat for better determining the metes, bounds and dimensions thereof;
>
> And also, without of warranty of title, all that certain land, lying between the above-referenced property and the low water mark of the Wilmington River and Turner's Creek;

2

> subject, however, to the rights or claims of
> the State of Georgia within the estuarine area
> as defined in the 'Coastal Marshlands
> Protection Act of 1970.'

Dckt. No. 485, Ex. No. 4 at Exhibit "A".  The Declaration makes

reference to, and incorporates, a certain 2002 plat drawn by Kern &

Coleman Co. (the "Plat").  Dckt. No. 485, Ex. No. 4, p. 1.  The Plat

is recorded in Condominium Plan Book 2, Page 2, Chatham County

Superior Court.  Dckt. No. 485, Ex. No. 5.  The Declaration sets

forth the following relevant definitions:

> 'Submitted Property,' as 'the property lawfully
> submitted to the provisions of the [Georgia
> Condominium] Act by the recording of
> condominium instruments pursuant to the
> provisions of the Act or this Declaration, said
> property being more particularly described in
> Exhibit "A".'  Dckt. No. 485, Ex. No. 4, p. 5
> at ¶1(w);

> 'Additional Property,' as 'any property which
> may be added to this expandable condominium in
> accordance with the provisions of the
> Declaration and the Georgia Condominium Act and
> shall include that portion of the property
> described in Exhibit "A" and designated as
> "RESERVED FOR FUTURE DEVELOPMENT" or similarly
> designated . . . .'  Dckt. No. 485, Ex. No. 4,
> p. 2 at ¶1(b));

> 'Unit' as a portion of the condominium intended
> for any type of independent ownership and use.
> Id. at ¶1(x); and

> 'Common Elements' as all portions of the
> Condominium other than the Units, and shall
> include the common areas and facilities.  Id.
> at ¶1(e).  All unit owners are to own an

3

undivided   joint   interest   in   the   common
elements.   Id. at ¶6(c)).

Debtor intended for the condominium development to be an

expandable condominium, and in the Declaration he reserved the right

to expand the condominium for the maximum initial statutory period,

pursuant to O.C.G.A. §44-3-77(b)(2), of seven (7) years.  Dckt. No.

485, Ex. No. 4, ¶23.  The Declaration further states that "the legal

descriptions of any additional property that may be added at

Debtor's option to expand the condominium "shall be the property

described in Exhibit "A". . . and designated as Reserved for Future

Development or similarly designated."  Id.

In an effort to accomplish this, the Plat, which is

referenced in the Declaration, depicts nine building pads of

different shapes and sizes, labeled as "PROPOSED" and "NOT YET

BEGUN."  Dckt. No. 485, Ex. No. 5.  The Plat further depicts the

proposed number of units and stories and designates that there will

be parking under each of the buildings labeled as "NOT YET BEGUN."

Id.  However, there are no metes and bounds legal description for

the nine building pads.  Dckt. No. 485, Ex. No. 5.  The Plat also

divides the property into three separate lots.  Id.  The Plat

includes the following three notations:

[U]tility, parking and access easement over Lot
1 as required to serve Lots 1, 2, & 3;

4

> [A]ll areas not covered by buildings to be
> common for use of Parking Access and Utilities;
> and
>
> [T]his Property is subject to any and all
> easements, covenants, or restrictions either
> recorded or unrecorded.

_Id._ The Plat also states: "SPECIAL NOTE: Proposed buildings and easements pertaining to water and sewer will be shown on this plat when the information becomes available to us." _Id._

Between May 2003 and March 2011, after the Declaration and the Plat were recorded, Debtor sold to various third parties 44 separate condominium units in the old historic hotel building located in the center of the 19.846 acres. _Id._ at Ex. No. 6.

Then, in August, 2004, Debtor executed a purchase and sale agreement (the "Agreement" or "PSA") with Plantation Group, LLC who assigned the Agreement to Wilmington Plantation. Dckt. No. 460, PSA Ex. C; Dckt. No. 485. Ex. No. 12. In the Agreement, Debtor agreed to sell, and Wilmington Plantation agreed to purchase, the following property for $13.2 million dollars:

> All that certain lot, tract or parcel of real
> estate, lying and being in Chatham County, 700
> Wilmington Island Road Savannah, Georgia, and
> more particularly described in [the attached
> exhibit], consisting of nine (9) condominium
> pad sites or a two hundred twenty unit (220)
> expansion of Wilmington Plantation, a
> horizontal property regime, together with all
> furniture, fixtures, and equipment, plants,
> shrubs and trees located thereon, and together

5

with all rights, ways and easements appurtenant thereto, including, without limitation, all of [Debtor's] right, title, and interest in and to the land underlying and air space overlying any public or private ways or streets crossing or abutting said real estate.

All of the right, title, interest, powers, privileges, benefits and options of [Debtor], or otherwise accruing to the owner of the Property [as defined by the PSA], in and to (I) any impact fee credits with, or impact fee payments to, any county or municipality in which the Land [as defined by the PSA] is located arising from any construction of improvements, or dedication or contribution of property, by [Debtor], or its predecessor in title or interest, related to the Land, (ii) any development rights, allocations of development density or other similar rights allocated to or attributable to the Land or the Improvements, whether the matters described in the preceding clauses (I), (ii) and (iii) arise under or pursuant to governmental requirements, administrative or formal action by governmental authorities, or agreement with governmental authorities or third parties.

All of [Debtor's] right, title, interest, powers, privileges, benefits and options of [Debtor] under any master deed, declaration of covenants, conditions and restrictions, architectural review board, homeowner's association (specifically including any declarant rights thereunder), all of which [Wilmington Plantation] shall be deemed the successor to the [Debtor], with all rights and authorities possessed by Debtor.

All of [Debtor's] right, title and interest in and to all assignable service contracts or agreements pertaining to the use, operation or maintenance of the Land or any improvements thereon.

6

> All of [Debtor's] right, title and interest in
> and to the 20 +/- acre parcel as described in
> survey recorded in Plat Book 2 at Page 12,
> Chatham County, Savannah Georgia.
>
> All of [Debtor's] right, title and interest in
> the 41 +/- acre marsh area which enjoins the
> land.
>
> All of [Debtor's] right, title and interest in
> the proposed marina to be located on Wilmington
> Plantation, which adjoins the Land, provided
> that the obligation to complete the marina
> improvements shall be the obligation of the
> Buyer.

Dckt. No. 460, PSA Ex. C, at ¶1(a) – (g).

Under the terms of the Agreement, Debtor agreed to convey to Wilmington Plantation "good and marketable fee simple title" to the property. _Id._ at ¶7(a). The Agreement defines "good and marketable fee simple title" as fee simple ownership that is: (i) free of all claims, liens and encumbrances of any kind or nature whatsoever other than the "Permitted Exceptions"; and (ii) insurable by a title insurance company reasonably acceptable to Plantation Group. _Id._ at ¶7(a). "Permitted Exceptions" include (A) current city, state, and county ad valorem taxes not yet due and payable; (B) easements for the installation or maintenance of public utilities serving only the Property; and (C) any other matters specified in exhibit "F", attached hereto. _Id._ at ¶7(a). Exhibit F states:

7

(1) Ad Valorem taxes for the year 2004 and all subsequent liens not yet due and payable; (2) <u>Any liens, encumbrances, restrictions or easements recorded in the public records of Chatham County, Georgia, provided that any liens or encumbrances to secure monetary amounts owed by Debtor shall be satisfied at Closing</u>.

Dckt. No. 460, PSA Ex. C, at Ex. F (emphasis added). The Agreement stated:

[Wilmington Plantation] shall have until the Due Diligence Date in which to examine title to the Property and in which to give [Debtor] written notice of objections which render [Debtor's] title less than good and marketable fee simple title. Thereafter, [Wilmington Plantation] shall have until the Closing Date in which to reexamine title to the Property and in which to give [Debtor] written notice of any additional objections disclosed by such reexamination. [Debtor] shall have until ten (10) days prior to the Closing Date in which to satisfy all objections specified in [Wilmington Plantation's] initial notice of title objections, or agree to satisfy and any such objections that can only be satisfied at Closing, and until the Closing Date in which to satisfy all objections specified in any subsequent notice by [Wilmington Plantation] of title objections. If [Debtor] fails so to satisfy any such objections, then, at the option of [Wilmington Plantation], [Wilmington Plantation] may: (I) terminate this Agreement, in which the Earnest Money shall be refunded shall be refunded to [Wilmington Plantation]. . .; (ii) if any such objection is based upon a deed to secure debt, deed of trust, mortgage, judgment, lien or other liquidated monetary claim, satisfy the objection, after deducting from the Purchase Price the cost of satisfying objection; or (iii) **waive such satisfaction**

8

> **and performance and consummate the purchase and
> sale of the Property**, or (iv) if any objection
> is of the typed described in clause (ii) above,
> or is an objection that arises after the
> Effective Date, exercise the rights and
> remedies as may be provided for in paragraph
> [17][1] in event of a breach or default by Debtor.

Dckt. No. 460, Ex. C, ¶7(b) (emphasis added). Also, the Agreement

requires Wilmington Plantation to hire a surveyor to prepare a plat:

> Survey. On or before the date fifteen (15)
> days after the Effective Date, [Wilmington
> Plantation] shall: (I) cause a surveyor
> licensed in the State of Georgia and reasonably
> acceptable to [Debtor], to prepare a current
> survey of the Land (herein called the
> "Survey"); (ii) cause two (2) plats of each
> survey to be delivered to [Debtor]. The Survey
> shall depict the number of acres of land
> contained in the Land, calculated to the
> nearest one-one hundredth (1/100) of an acre,
> and the number of acres of land contained in
> the land that is located within an area of the
> type described in paragraph 11(m) and (n)
> hereof, within any easement, or within the
> right of way of any public or private street or
> road. Any improvements to the Land, all
> setbacks, encroachments or any other matters
> affecting title to the Land.

Id. at ¶8. Notwithstanding the foregoing, the PSA also states that

"[Debtor] acknowledges and agrees that no examination or

investigation of the Property or of the operation of the Property by

or on behalf of [Wilmington Plantation] prior to Closing shall in

---

[1]    The PSA cites the incorrect paragraph number for the
remedies provision.

9

any way modify, affect or diminish [Debtor's] obligations under the representations, warranties, covenants and agreements set forth in this Agreement." <u>Id.</u> at ¶14.  The Agreement further provides that all of its provisions survive the consummation of the purchase and sale of the Property, the delivery of the deed, and the payment of the purchase price.   Dckt. No. 460, PSA Ex. C at ¶22.

Prior to closing, in February 2005, a quiet title action was filed in Superior Court of Chatham County, Georgia styled <u>Jeffrey Sheffer, et al. v. William Foster</u>, Civil Action No. CV05-0251 (the "Sheffer Quiet Title Action").  Dckt. No. 485, Ex. No. 9.  The complaint sought a determination that the condominium unit owners owned an undivided joint interest in the 19.846 acre "common area" due to Debtor's alleged submission of the entire tract to the condominium and failing to reserve any property for future development.  In conjunction with the Sheffer Quiet Title Action, a lis pendens was placed upon the lien docket in the Superior Court of Chatham County, Georgia.  Dckt. No. 485, Ex. No. 10.   Prior to closing, Wilmington Plantation became aware of the Sheffer Quiet Title Action and the lis pendens.  Dckt. No. 485, Ex. No. 12 at ¶4. Ultimately, a Settlement Agreement was reached in June of 2005 resulting in the cancellation of the lis pendens prior to closing. Dckt. No. 485, Ex. Nos. 13 and 15.

10

Wilmington Plantation was well aware of this suit and as a condition of closing, Wilmington Plantation insisted that: (I) the lis pendens be cancelled, and (ii) Wilmington Plantation must be able to obtain title insurance insuring its interest in the Property being acquired from Debtor. Dckt. No. 485, Ex. No. 12 at ¶5. Prior to the Closing Date, an attorney ("Real Estate Attorney") certified title to the property being conveyed to Wilmington Plantation and title insurance was issued to Wilmington Plantation and its lender. Dckt. No. 485, Ex. Nos. 16, 17 and 18.[2]   In August 2005, Debtor executed and delivered a warranty deed to Wilmington Plantation, which was recorded in Deed Book 292 C, Page 630 Chatham County Superior Court (the "Warranty Deed"). Dckt. No. 485, Ex. No. 19. The Warranty Deed, by its terms, conveyed to Wilmington Plantation the following property:

> ALL that certain tract or parcel of land lying, being and situate in the 5th G.M. District, Chatham County, Georgia, being Lots 1, 2 and 3, Sapelo Garden Subdivision, Wilmington Plantation, [metes and bounds description of the entire tract] . . . Said property containing 19.846 acres. . . .

Id. The Warranty Deed also states that "specifically included and

---

[2]   Wilmington Plantation has brought an action against its title insurance policy, but according to Wilmington Plantation there has been no recovery and any recovery would be credited against any such recovery of its unsecured claim in this case. Dckt. No. 485, Ex. No. 37.

11

contained within this legal description are nine (9) condominium pad sites, which allow for a two hundred twenty (220) unit expansion." Id. The Warranty Deed states it is "given subject to all easements and restrictions of record, if any." Id. It further states that Debtor "makes no assignment of any condominium units in the old hotel, previously sold or unsold" and Debtor "is retaining ownership of all individual condominium units and the penthouse not previously sold." Dckt. No. 485, Ex. No. 19. The Warranty Deed also states Debtor "will warrant and forever defend the right and title" to the property against the claims of all persons. Dckt. No. 485, Ex. No. 19. Also at closing, Debtor assigned all of his rights in the Sheffer Quiet Title Action to Wilmington Plantation. Dckt. No. 485, Ex. No. 22. Debtor also assigned all of his rights as the developer of the condominium to Wilmington Plantation. Dckt. No. 485, Ex. No. 23.

After closing, Wilmington Plantation received notice that the plaintiffs in the Sheffer Quiet Title Action filed a Motion to Enforce Settlement Agreement (the "Motion to Enforce"). Dckt. No. 485, Ex. No. 24. The Motion to Enforce alleges Debtor had breached certain provisions in the Settlement Agreement dealing with various repair and construction related issues with the old hotel building and grounds. Wilmington Plantation moved to intervene in the

12

Sheffer Quiet Title Action, which was filed in November 2005. Dckt. No. 485, Ex. No. 25. A second quiet title lawsuit also was filed by another condominium unit owner in the Chatham County Superior Court styled Radinick v. Wilmington Plantation, LLC, Civil Action No. CV05-1725 (the "Radinick Litigation"). Dckt. No. 485, Ex. No. 26. Another lawsuit was filed by Wilmington Plantation Owner's Association, Inc. (the owners' association of the condominium owners of the old hotel building) in the Superior Court of Chatham County, Georgia on November 18, 2005 styled Wilmington Plantation Owner's Association, Inc. v. Michael H. Cannon, et al., Civil Action No. CV05-1739. Dckt. No. 485, Ex. No. 27. A fourth lawsuit was filed in the Superior Court of Chatham County, Georgia on November 28, 2005 styled Wilmington Plantation Owner's Association, Inc. v. Wilmington Plantation, LLC, et al., Civil Action No. CV05-1780. Dckt. No. 485, Ex. No. 28. These four lawsuits were consolidated by the Superior Court on January 9, 2006 (the "Consolidated Lawsuits"). Dckt. No. 485, Ex. No. 29. On January 9, 2006, the Superior Court entered an order directing the parties to serve all interested parties six separate documents: (1) the Sheffer Quiet Title Action complaint; (2) the Settlement Agreement; (3) the Radinick Quiet Title Action Complaint; (4) the Answer and Counterclaim of Wilmington Plantation in the Radinick Quiet Title Action; (5) the

13

order consolidating the Consolidated Lawsuits; and (6) a proposed reformation of the Declaration which contains the metes and bounds description of the nine building pads (the "Notice Order"). Dckt. No. 485, Ex. No. 30.

The Superior Court conducted a three day settlement conference in an attempt to resolve the Consolidated Lawsuits (the "Mediation"). Dckt. No. 485, Ex. No. 33. The Mediation resulted in an announcement of settlement being made in open court on July 19, 2006. Dckt. No. 485, Ex. No. 32. The court stated the purpose of the settlement conference was to resolve all outstanding issues involving building repairs, as well as questions of the "cloud on the title involving the development of the associated sites on that property." Id. In the announcement at the settlement conference, counsel for Mr. Radinick, Mr. Schneider stated as follows:

> We have also worked up a proposed first amendment to the declaration that reflects the removal of these nine pads from the area in the declaration so as to effectuate their being a reformation of the original declaration. . . there's an agreement that the . . . [Wilmington Plantation] is obligated under any circumstances to submit any of this property that's defined in two of the terms of the declaration of covenants, but they have seven years from [July 19, 2006] to do that, to bring that property in and to submit it to the declaration for the terms of the covenant and declaration. It's my understanding also, and this applies to all of the pending actions, that the parties have relinquished their rights

14

> to pursue the recovery of attorney's fees against the other, and we anticipate that the parties will execute a global or mutual release of any and all liability other than as agreed hereto today.

Dckt. No. 485, Ex. No. 32 at 31:16-25 and 32:1-10. The court stated on the record that the hearing was "noticed to all interested parties, to include any individual unit owners who were unrepresented by counsel and would not have otherwise received notice." Id. at 38:21-24. Wilmington Plantation's counsel, who served the documents also informed the court that "all the mortgage companies have been notified, also." Id. at 39:3-5. The court further instructed that, "[W]e have established a dispute resolution process that is designed to be on an accelerated basis, and the reason that I pretty much insisted on that. . . was because I know that the whole project has been in limbo for a long time, and I sense the frustration of the residents and Mr. Foster. . . and the new developer, that it wasn't moving forward, it was time to get it resolved. . . we cannot brook any further protracted delay with hearings and appeals. . . that is why I insisted on this accelerated dispute resolution process. . . I will be glad to consider [major issues], and I encourage everybody to think carefully before you do invoke the dispute resolution process we set out." Id. at 41-42:15-24 and 1-23. The terms agreed upon in the Settlement Conference

15

were compiled into the 2006 Consent Order by counsel for Wilmington Plantation, and the order was entered by the Superior Court in September 2006 (the "2006 Consent Order") with the amended declaration and plat attached as an exhibit. Dckt. No. 485, Ex. No. 33.

The 2006 Consent Order with the attachments was recorded at Deed Book 314 T, Page 440 in the Chatham County Superior Court on October 12, 2006. Dckt. No. 485, Ex. No. 33. As to title issues the 2006 Consent Order states:

> A) The Declaration of Condominium of Wilmington Plantation dated July 13, 2000, and recorded on December 5, 2002, in Book 243V, Page 688, et seq., Chatham County, Georgia records ("The Original Declaration") is reformed effective July 19, 2006, a true and correct copy which is marked "Petitioner's Exhibit 1" and made a part hereof.
>
> B) The security deed held by Wilmington Plantation, LLC's lender (recorded in Deed Book 292C, Page 634, Chatham County Real Property Records) <u>is intended to encumber only the property described in the First Amendment to the Declaration; that being nine building pads.</u>
>
> C) <u>Wilmington Plantation, LLC, acknowledges that it holds title to the nine building pads as described in the First Amendment</u>.
>
> D) UCC Financing Statements impose no lien on anything other than the property or equipment of Wilmington Plantation, LLC.

Dckt. No. 485, Ex. No. 33, Consent Order, ¶11 (emphasis added). The

16

amended declaration remains unsigned by Wilmington Plantation, the

Declarant.    The  2006  Consent  Order  states  it  is  a  "global

settlement."  Dckt. No. 485, Ex. No. 33, Consent Order, ¶12.    The

global settlement further states that:

> [I]t is the intent of all parties that this
> Order constitutes a global settlement of all
> issues pending in each of the referenced cases.
> The parties agree to withdraw all motions and
> each of the cases referenced herein shall be
> dismissed.    Additionally, Mr. Radnick shall
> release the Lis Pendens he filed against the
> subject property within ten (10) days of the
> date of this Order.
>
> Each of the parties waive, relinquish and
> release their rights to pursue the recovery of
> attorneys' fees against the other.  The parties
> specifically except and exclude from the
> releases any claims or potential claims between
> Mr. Foster and Wilmington Plantation, LLC
> relating to expenditures pertaining to the
> homeowners association or the development of
> the property that are not part of the quiet
> title action which is before the Court.

Dckt. No. 485, Ex. No. 33, Consent Order, ¶12 (emphasis added).

The 2006 Consent Order has a Dispute Resolution Process

which requires:

> All matters arising out of any of the related
> law suits shall be resolved exclusively under
> this dispute resolution process.  Any party
> shall have a period of five (5) days after
> receipt of a written notice to file an
> objection of the proposed items, whether it be
> an estimate, the scope of work or any other
> item or matter arising under this Consent
> Order.  The Court, may but is not required, to

employ an architect to assist the Court in analyzing the objection. The Court shall summarily rule on the objection, provided that if any matter involves in excess of $25,000.00, the parties shall have the right to a summary hearing on the issues before the Court, including the right to submit affidavits and submit limited live testimony with regard to said issue. The determination of the Court shall be final and not appealable as to that issue. The cost of any independent expert or consultant designated by the Court to assist the Court will be paid by Mr. Foster, except to the extent that those costs for attorney's fees and the costs for the experts (which is anticipated to be a retired architect) could be transferred and without merit, in which case the party offended by that could request and seek an award of attorney's fees and expert fees in connection with that matter.

Dckt. No. 460, Ex. K, ¶3.

Debtor avers that as of November 9, 2012, he has paid over $2,407,000.00 in satisfaction of all his obligations under the 2006 Consent Order. Dckt. No. 508, Ex. A, ¶6.

The various members of Wilmington Plantation have identified the following reasons why they elected not to develop the nine (9) building footprints following entry of the 2006 Consent Order: (a) the overall economic downturn, which does not support vertical condominium regimes such as proposed; (b) the absence, or unavailability, of condominium construction financing in the present marketplace; (c) building regulations placed upon Wilmington Plantation by the condominium unit owners' association and (d)

18

problems with the condominium unit owners and the fact that they are now the minority board members on the condominium unit owners' association.   Dckt. No. 460, Ex. P; Dep. of Bruce Gordon Davis, 59:13-60:2; 62:18-63:16; 64:1-65:12; Dckt. No. 460, Ex. Q, Dep. of Randall James Hoffman, 57:7-58:11; 67:8-68:13; 69:1-69:11; 70:11-70:20; 76:14-77:7; Dckt. No. 460, Ex. N, Dep. of James Alton Campbell, 53:20-55:25; 73:24-75:16.

After entry of the 2006 Consent Order, because of repair disputes Debtor was having with individual condominium unit owners and the home owners' association, Debtor filed a Motion To Set Aside the 2006 Consent Order to which Wilmington Plantation opposed. Dckt. No. 460, Exs. V, W, X, and Z.   In the Motion To Set Aside, Debtor alleged: the Superior Court lacked jurisdiction to order the relief granted, the 2006 Consent Order is facially invalid because the Superior Court lacked jurisdiction over all the parties; and that the order is unenforceable according to its own terms.   Dckt. No. 460, Ex. Z.  Wilmington Plantation disagreed and argued that the 2006 Consent Order was not invalid on its face due to lack of jurisdiction, as the 2006 Consent Order stated that all interested parties were served and had an opportunity to object and Wilmington Plantation argued further that the parties, including itself, had relied upon the validity of the 2006 Consent Order.   The Superior

19

Court, after considering the briefs and arguments of the parties, denied Debtor's motion to set aside and upheld the validity of the 2006 Consent Order. Dckt. No. 460, Ex. AA. Debtor filed a discretionary appeal of this decision; however, the Georgia Court of Appeals denied his application, and the Georgia Supreme Court denied certiorari January 12, 2009. Dckt. No. 509, Ex. Nos. 1 and 2. On August 11, 2010, prior to the bankruptcy case, Wilmington Plantation filed a lawsuit against Debtor asserting breach of contract and warranty of title (the "Middle District Complaint"). Dckt. No. 485, Ex. No. 34.

On January 19, 2011, Debtor filed for chapter 11 bankruptcy relief staying the action on the Middle District Complaint. On May 16, 2011, Wilmington Plantation filed a proof of claim in Debtor's bankruptcy case the amount of $21,138,884.00. Proof of Claim No. 15. Debtor objected to Wilmington Plantation's claim on May 3, 2012. The parties have engaged in discovery and have submitted these cross motions for summary judgment.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c);[3] see also

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (internal quotations omitted).  Once the

moving party has properly supported its motion with such evidence,

the party opposing the motion "may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth

specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); First

Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 288-89

(1968); Fed. R. Civ. P. 56(e).  "In determining whether the movant

has met its burden, the reviewing court must examine the evidence in

a light most favorable to the opponent of the motion.  All

reasonable doubts and inferences should be resolved in favor of the

opponent."  Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d

1486, 1502 (11th Cir. 1985)(citations omitted).  Here, both parties

---

[3] Pursuant to Federal Rule of Bankruptcy Procedure 7056, Rule 56 of the Federal Rules of Civil Procedure is applicable in bankruptcy adversary proceedings.

✎AO 72A
(Rev. 8/82)

argue they are entitled to summary judgment based upon the undisputed facts.

Debtor argues Wilmington Plantation's claim is barred by the Rooker-Feldman doctrine, res judicata, caveat emptor/waiver, judicial estoppel, laches, its failure to mitigate damages, and further argues the 2006 Consent Order is valid to amend the Declaration pursuant to O.C.G.A. §44-3-115 and cured any defects in title. Debtor further contends he has not breached the PSA nor the Warranty Deed. Conversely, Wilmington Plantation argues it is entitled to summary judgment because even if the 2006 Consent Order is valid, Wilmington Plantation does not have title to the nine building pads nor title to any of the land surrounding the nine building pads and therefore, Debtor has breached the PSA and the Warranty Deed.

**Rooker-Feldman Doctrine.**[4]

At oral arguments on summary judgment, given the state court's involvement in these matters, the Court inquired whether the Rooker-Feldman doctrine was applicable to the analysis of the 2006 Consent Order and the parties briefed this matter to the Court. The

---

[4] The headings in this opinion are used for organizational purposes only and much of the analysis on one section also is applicable in other sections. Therefore, this structure is not in any way to limit the analysis to one issue.

22

Rooker-Feldman doctrine is a limitation on a trial court's subject matter jurisdiction set forth in two U.S. Supreme Court decisions-- <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). The doctrine reinforces the fact that lower federal courts lack jurisdiction to exercise appellate review of a state court order, as such power is reserved for the United States Supreme Court. <u>See</u> 28 U.S.C. §1257(a); <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 292 (2005); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. at 416; <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. at 476. For the reasons discussed below, I find the Rooker-Feldman doctrine does not apply to the current matters.

In <u>Exxon Mobil Corp.</u>, the Supreme Court noted that the lower courts have expanded the doctrine beyond its original contours and the Supreme Court limited the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp.</u>, 544 U.S. at 284, 291. The Rooker-Feldman doctrine is a narrow doctrine that holds a federal court cannot "become a court of appeals for state court decisions." <u>Vasquez v. YII Shipping Co., Ltd.</u>, 692 F.3d 1192, 1195 (11th Cir.

23

AO 72A
(Rev. 8/82)

2012).

A. <u>Order Denying Debtor's Motion to Set Aside</u>.

Debtor argues the Rooker-Feldman doctrine precludes this Court from reviewing the state court order denying Debtor's Motion to Set Aside. The state court held that service was proper and it had proper jurisdiction. The Georgia Court of Appeals denied review of the order and the Georgia Supreme Court denied certiorari.

For Rooker-Feldman doctrine to apply:  1) the complaint must have been brought by a state court loser complaining of injuries caused by 2) a prior state court judgment and 3) seeking review and rejection of the state court judgment. <u>See</u> <u>Brown v. R.J. Reynolds Tobacco Co.</u>, 611 F.3d 1324, 1330 (11th Cir. 2010).

Since Wilmington Plantation was not a state court loser, the Rooker-Feldman doctrine does not apply to the order denying the Motion to Set Aside. Wilmington Plantation actually won in state court on the issue of jurisdiction. The state courts upheld the validity of the 2006 Consent Order as urged by Wilmington Plantation. In addition as discussed hereafter, I have found that the order denying the Motion to Set Aside is not a final order and therefore Rooker-Feldman does not apply to the current matter. For these reasons, I find this case does not fall within the narrow scope of the Rooker-Feldman doctrine. <u>See</u> <u>Brown</u>, 611 F.3d at 1331

24

(noting that the federal action must be brought by a state court loser for Rooker-Feldman to apply).   Since the Rooker-Feldman doctrine is inapplicable, the doctrine of preclusion is the applicable doctrine.   See Id. at 1331.

B.   The 2006 Consent Order.

Debtor also argues Rooker-Feldman requires this Court to dismiss this action arguing this Court lacks of jurisdiction to review the 2006 Consent Order.   The 2006 Consent Order was entered prior to  Wilmington Plantation's commencement of the Middle District of Georgia case in 2010.   There is an issue as to whether Wilmington Plantation is a state court loser since the order is a consent order.   However, as Debtor has pointed out, the Eleventh Circuit has applied Rooker-Feldman to state court consent orders. See Alyshah Immigration Agency, Inc. v. The State Bar of Georgia, 2005 LEXIS 43624 (N.D. Ga. March 11, 2005).   The plaintiffs in Alyshah, unlike Wilmington Plantation, were the ones being enjoined by the consent order and filed a complaint asking the federal court to rid them of the injury caused by the state court consent judgment.   Unlike the plaintiffs in Alyshah, Wilmington Plantation is not the state court loser complaining of injuries caused by the 2006 Consent Order.   Rather, Wilmington Plantation is pursuing breach of contract and breach of warranty claims that it argues

25

remain outstanding under the terms of the 2006 Consent Order.  In addition, as discussed hereafter, I have found that the 2006 Consent Order is not a final order and therefore Rooker-Feldman does not apply to the current matter.  Therefore, I find the narrow doctrine of Rooker-Feldman does not apply and consider the matters involving the 2006 Consent Order under the doctrine of preclusion.  Brown, 611 F.3d at 1331.

**Res Judicata**.

"Under the Full Faith and Credit Act, 28 U.S.C. §1738, a federal court must 'give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered.'"  Brown, 611 F.3d at 1331.  The order denying the Motion to Set Aside the 2006 Consent Order and the 2006 Consent Order itself must be given the same preclusive effect as a Georgia state court would give such orders.  Id.; Vasquez v. YII Shipping Co., Ltd., 692 F.3d 1192 (11th Cir. 2012); Sophocleus v. Ala., Dept. of Transp., 371 F. App'x 996, 998 n. 1 (11th Cir. 2010)("[I]n determining the res judicata effect of an earlier state court judgment, we apply the res judicata doctrine of the state whose decision is set up as a bar to further litigation."); Green v. Jefferson Cnty. Comm'n, 563 F.3d 1243, 1252 (11th Cir. 2009)(same).

In this case, the orders being considered were issued by

26

Georgia courts. In Georgia, res judicata provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. §9-12-40. Res judicata bars a subsequent action where the matter was or could have been litigated in a prior action where "there is identity of the parties or their privies; identity of the cause of action; and an adjudication on the merits by a court of competent jurisdiction in the prior action." Evans v. Dunkley, 728 S.E.2d 832, 836 (Ga. Ct. App. 2012) citing Labovitz v. Hopkinson, 519 S.E.2d 672 (Ga. 1999). The party must have been given a full and fair opportunity to litigate. Bates v. Bates, 730 S.E.2d 482, 485 (Ga. Ct. App. 2012).

Debtor asserts the doctrine of res judicata prevents the re-litigation of the validity of the 2006 Consent Order. After the 2006 Consent Order was entered, Debtor sought to set it aside arguing: that the state court lacked jurisdiction over all of the unit owners; that the 2006 Consent Order was invalid on its face; and that the order was unenforceable according to its own terms. Wilmington Plantation disagreed and submitted briefs arguing that notice had been given to all interested parties, the parties had

27

relied upon the order and that the Debtor lacked standing to assert the rights of the unit owners. Dckt. No. 460, Ex. V, W, and X. The Superior Court order denying the Motion to Set Aside notes that Debtor has moved to set aside the global settlement "on the grounds that the court lacked jurisdiction, that the order is invalid on its face, and that the order is unenforceable according to its own terms. The other parties to the global settlement agreement disagree and strenuously object to the setting aside of what was an agreement by all parties." Dckt. No. 460, Ex. AA. After reading and considering the briefs filed by all parties which included Wilmington Plantation's brief in opposition, the Superior Court denied the Motion to Set Aside. Dckt. No. 460, Ex. AA.

First, as to identity of parties, both Wilmington Plantation and Debtor were parties in the state court action. Wilmington Plantation argues there was not an identity of parties since Debtor and Wilmington Plantation were both on the same side as defendants in the underlying consolidated state court matter. However, as to identity of the parties, res judicata "does not require that all parties on the respective sides of litigation in both cases be identical, but only those by and against whom the defense of res judicata is invoked." Evans v. Dunkley, 728 S.E.2d at 836. "It is not required that all parties on the respective

28

sides of the litigation in the two cases shall have been identical, but it is sufficient as to the identity of the parties if those by and against whom the defense of res judicata is invoked in the latter case were real parties at interest or privies as to the controversy in the former case." Gamble v. Gamble, 48 S.E.2d 540, 544 (Ga. 1948). Wilmington Plantation and Debtor were real parties in interest in the prior state case and opposed each other on the issue at hand. Therefore there was an identity of parties.

However, because the 2006 Consent Order is an interlocutory order, the order denying the Motion to Set Aside was also interlocutory, in nature, and therefore, I find res judicata does not bar Wilmington Plantation's claim. The 2006 Consent Order states: "[I]t is the intent of all parties that this Order constitutes a global settlement of all issues pending in each of the referenced cases. The parties agree to withdraw all motions and each of the cases referenced herein shall be dismissed." Dckt. No. 485, Ex. No. 33, Consent Order, ¶12. However, the 2006 Consent Order was not a final order as issues remained to be resolved in the trial court. See Mays v. Rancine-Kinchen, 729 S.E.2d 321, 322 (Ga. 2012)(stating that orders that are final leave no remaining issues to be resolved in the lower court). In addition, it is undisputed that the parties have not all dismissed their cases. In fact, the

29

Sheffer Quiet Title Action has been removed to the Southern District of Georgia. Furthermore, the matter remains open with the trial court retaining the matter for ongoing resolution through the alternative dispute resolution process.

Debtor also argues that the Order denying the Motion to Set Aside is final because he exhausted his appeals on this issue. Debtor applied for discretionary appeal which was denied by the Court of Appeals. Thereafter, the Georgia Supreme Court also denied Debtor's petition for certiorari. Pursuant to O.C.G.A. §5-6-35, an appeal from an order denying a motion to set aside is required to be brought by application whether it is a final order or not. O.C.G.A. §5-6-35 (a)(8).[5] Georgia Code Section 5-6-34 authorizes appeals from all final judgments except as provided in O.C.G.A. §5-6-35. Section 5-6-35(b) states:

> All appeals taken in cases specified in subsection (a) of this Code section shall be by

---

[5]  O.C.G.A. §5-6-35(a)(8) states:

(a) Appeals in the following cases shall be taken as provided in this Code section:

> (8) Appeals from orders under subsection (d) of Code Section 9-11-60 denying a motion to set aside a judgment or under subsection (e) of Code Section 9-11-60 denying relief upon a complaint in equity to set aside a judgment;

30

> application in the nature of a petition
> enumerating the errors to be urged on appeal
> and stating why the appellate court has
> jurisdiction. The application shall specify
> the order or judgment being appealed *and, if
> the order or judgment is interlocutory*, the
> application shall set forth, in addition to the
> enumeration of errors to be urged, the need for
> interlocutory appellate review.

O.C.G.A. §5-6-35(b)(emphasis added). See <u>Guthrie v. Wickes</u>, 673 S.E.2d 523, 526 (Ga. Ct. App. 2009)(an order denying a motion to set aside default judgment was a final order and an order denying the application for discretionary appeal invokes the doctrine of res judicata where the order appealed from is a final order). However, the denial of application to appeal a non-final order while persuasive is not res judicata. See <u>Citizens & S. Nat. Bank v. Rayle</u>, 273 S.E.2d 139, 142 (Ga. 1980)(denial of application for discretionary appeal is persuasive but not res judicata); <u>Davis v. Foreman</u>, 717 S.E.2d 295, 298 (Ga. Ct. App. 2011)("[T]he denial of an application for discretionary appeal invokes the doctrine of res judicata where the judgment appealed from was final and on the merits. However, 'when the judgment being appealed was interlocutory in nature, the denial of an application for discretionary appeal does not operate as res judicata.'").

Debtor also argues the 2006 Consent Order is entitled to preclusive effect as to Wilmington Plantation's breach of contract

and breach of warranty claims based upon rules of contract construction since the prior decision is a consent order and therefore the scope of preclusion is narrower. See Alyshah Immigration Agency, Inc. v. The State Bar of Georgia, 2005 LEXIS 43624, at *6-7 (11th Cir. 2005)(stating that traditional res judicata principals do not apply as the scope is much narrower). The 2006 Consent Order must be "interpreted according to its express terms, rather than according to the traditional principles of res judicata." Id. citing Norfolk S. Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1291 (11th Cir. 2004). Only claims which are properly encompassed by the language of the 2006 Consent Order are barred. See Alyshah Immigration Agency, Inc., 2005 LEXIS 43624, at *6-7.

> As to title issues the 2006 Consent Order states:
>
> A) The Declaration of Condominium of Wilmington Plantation dated July 13, 2000, and recorded on December 5, 2002, in Book 243V, Page 688, et seq., Chatham County, Georgia records ("The Original Declaration") is reformed effective July 19, 2006, a true and correct copy which is marked "Petitioner's Exhibit 1" and made a part hereof.
>
> B) The security deed held by Wilmington Plantation, LLC's lender (recorded in Deed Book 292C, Page 634, Chatham County Real Property Records) is intended to encumber only the property described in the First Amendment to the Declaration; that being nine building pads.

C) Wilmington Plantation, LLC, acknowledges that it holds title to the nine building pads as described in the First Amendment.

D) UCC Financing Statements impose no lien on anything other than the property or equipment of Wilmington Plantation, LLC.

Dckt. No. 485, Ex. No. 33, Consent Order, ¶11 (emphasis added).  The 2006 Consent Order states it is a "global settlement."  Dckt. No. 485, Ex. No. 33, Consent Order, ¶12.  The global settlement further states that:

[I]t is the intent of all parties that this Order constitutes a global settlement of all issues pending in each of the referenced cases. The parties agree to withdraw all motions and each of the cases referenced herein shall be dismissed.  Additionally, Mr. Radnick shall release the Lis Pendens he filed against the subject property within ten (10) days of the date of this Order.

Each of the parties waive, relinquish and release their rights to pursue the recovery of attorneys' fees against the other.  The parties specifically except and exclude from the releases any claims or potential claims between Mr. Foster and Wilmington Plantation, LLC relating to expenditures pertaining to the homeowners association or the development of the property that are not part of the quiet title action which is before the Court.

Dckt. No. 485, Ex. No. 33, Consent Order, ¶12 (emphasis added).

Wilmington Plantation contends the above emphasized language is a reservation of any claims between Debtor and Wilmington Plantation arising out of the development of the

33

subdivision.   Conversely, Debtor argues the language is much narrower and it only reserves claims for expenditures pertaining to the development of the property and not a general reservation of any and all claims between Debtor and Wilmington Plantation.   Debtor contends the issue of title was clearly part of the 2006 Consent Order and cannot be re-litigated between the parties.   For purposes of Debtor's summary judgment motion, the Court must view the facts in the light most favorable to Wilmington Plantation.   Given the ambiguity of the scope of this language, and the fact that I have found the order denying the Motion to Set Aside is not a final order, I find a question of fact remains on the issue of whether the 2006 Consent Order was intended to resolve Wilmington Plantation's breach of contract and breach of warranty claims and therefore, deny summary judgment on this issue.

**Judicial Estoppel**.

Next, Debtor argues that the doctrine of judicial estoppel prevents Wilmington Plantation from asserting a position that is contrary to the one it asserted in state court as to the validity of the 2006 Consent Order.   Judicial estoppel is utilized to protect the integrity of the judicial process by preventing a party from deliberately changing positions according to the exigencies of the moment.   New Hampshire v. Maine, 532 U.S. 742, 749 (2001); Pew v.

34

One Buckhead Loop Condo. Ass'n, Inc., 700 S.E.2d 831 (Ga. Ct. App. 2010). "This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" New Hampshire v. Maine, 532 U.S. at 749 quoting Pegram v. Herdrich, 530 U.S. 211, 227, n. 8 (2000). The Supreme Court stated three typical factors to consider:

> (1) a party's later position must be clearly inconsistent with its previous position;
>
> (2) whether the party succeeded in persuading a court to accept its prior position; and
>
> (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. at 750-751; see also Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006). The Eleventh Circuit has considered two other factors in applying judicial estoppel: whether the inconsistent position was taken under oath in the prior proceeding and whether the inconsistent statements were calculated to make a mockery of the judicial system. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).

Debtor argues the doctrine of judicial estoppel prevents Wilmington Plantation from questioning the validity of the 2006 Consent Order. Previously, in connection with the state court

35

action, Wilmington Plantation successfully argued that service on the owners was proper and urged the state court to uphold the validity of the 2006 Consent Order as it was facially valid, but questioned Debtor's standing to pursue the motion. However, in this Court, Wilmington Plantation has taken the position that the 2006 Consent Order resolved warranty-related and development-related issues but not title matters. These are different issues and therefore, I do not find Wilmington Plantation is taking a clearly inconsistent position or would obtain an unfair advantage or impose an unfair detriment. Furthermore, I find Debtor has not shown Wilmington Plantation's positions were calculated to make a mockery of the judicial system. For these reasons, I deny Debtor's summary judgment motion on this issue.

**Laches.**

Debtor also asserts Wilmington Plantation should be barred by the doctrine of laches from attacking the validity of the 2006 Consent Order. Debtor contends there is no reason for Wilmington Plantation waiting over four years to file the breach of contract or breach of warranty claims and now Debtor is unable to pursue any malpractice action to recover possible damages if Debtor is found liable. Furthermore, Debtor has spent over $2 million dollars in reliance on the 2006 Consent Order.

36

"Whether laches should apply depends on a consideration of the particular circumstances, including such factors as the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for a delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay." Hall v. Trubey, 498 S.E.2d 258, 261 (Ga. 1998). "Laches is not merely a question of time, but principally the question of the inequity in permitting the claim to be enforced." Id. First, over four years have passed between the time the 2006 Consent Order was entered and the time Wilmington Plantation filed its suit in the Middle District of Georgia in 2010. Six years have passed since the PSA was entered in August of 2004 and more than five years have passed from when the Warranty Deed was delivered in August 2005 to when the Middle District of Georgia suit was filed in 2010. Comparatively, Wilmington Plantation's delay is not as long as other Georgia cases that have barred actions based upon laches. See Cooper v. Aycock, 34 S.E.2d 895 (Ga. 1945)(action to declare title to property was barred by the doctrine of laches after eleven years had passed since plaintiff had questioned defendant about the land); see also Hollenshead v. Partridge, 104 S.E. 206, 207 (Ga. 1920)(breach of warranty claim brought 15 years later without

37

explanation barred by laches where defendant was deceased and subject land had been distributed to heirs).

There is no doubt that the delay has caused Debtor to sustain loss since he avers he will no longer be able to pursue potential malpractice claim(s). He has expended over $2 million dollars in reliance upon the validity of the 2006 Consent Order. See Howington v. Howington, 637 S.E.2d 389, 390 (Ga. 2006)(to prevail on laches defense, party must show harm or prejudice caused by delay). However, much of this money arguably would have to have been spent to address Debtor's issues with the unit owners.

The material facts allegedly giving rise to the breach did not change from 2006 to 2010. Wilmington Plantation could have very well acted sooner since it possessed all the necessary facts. Furthermore, Wilmington Plantation has had possession of the property and stated the developmental details are the result of the economy and restrictions on the building project placed upon it by the condominium unit owner's association and problems with it being the minority on the board of the condominium unit owners' association as the result of the title related issues. Nevertheless, it appears that the reason for the delay is that Wilmington Plantation and others thought the 2006 Consent Order was sufficient to establish Wilmington Plantation's title to the nine

38

building pads.   Wilmington Plantation subsequently has become concerned after talking with real estate attorneys about whether it has clear title even with the 2006 Consent Order.   Dckt. No. 511, Tr. Hr'g Oct. 31, 2012, 80:12-24.   Wilmington Plantation has been actively involved in defending the validity of the 2006 Consent Order against Debtor on appeal in state court.

Given this history of the case, despite the delay, the Court is convinced that it can make safe conclusions as to the cause of action and there is no concern as to loss of evidence.  See Grant v. Hart, 14 S.E.2d 860, 870 (Ga. 1941)(for laches to apply "the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, due to loss or obscuration of evidence of the transaction in issue, or where the lapse of time has been sufficient to create or justify a presumption against the existence or validity of the plaintiff's right, or to justify a presumption that, if the plaintiff was ever possessed of a right, it has been abandoned or waived, or has been satisfied.").   In this case, the evidence has been preserved as it is mainly documents and matters of public record.  The Court will be able to make a determination based upon the evidence presented.   Furthermore, while the deeds and the

39

Declaration have been of record for a long period of time, this is insufficient to bar Wilmington Plantation's claims. See Rylee v. Abernathy, 82 S.E.2d 220 (Ga. 1954)(where deed was of record for a long period of time and provided constructive notice, this was not enough to preclude a breach of warranty claim under the doctrine of laches).

At this point, Wilmington Plantation's excuse for the delay is reasonable and not a grounds to preclude its arguments on the grounds of laches. For these reasons, I deny Debtor's motion for summary judgment as to this issue.

**Mitigation of Damages.**

Debtor also argues assuming there is a breach of contract, Wilmington Plantation has failed to mitigate its damages as required by O.C.G.A. §13-6-5 which states, "[w]here by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." O.C.G.A. §13-6-5. Debtor argues Wilmington Plantation failed to object to title defects, failed to raise these current issues in state court during the settlement conference, failed to utilize O.C.G.A. §44-3-115 to cure any defects, and failed to maintain control of the homeowner's association by voluntarily agreeing to appoint only two of the five member board of directors. Conversely, Wilmington

40

Plantation argues it contracted to buy this property and instead has been mired in disputes and it has mitigated its damages by intervening in the Sheffer Quiet Title Action, entering into and drafting the 2006 Consent Order. Wilmington Plantation contends the main intent of the 2006 Consent Order was to address warranty-repair type work between Debtor and the condominium unit owners, and Wilmington Plantation's involvement is further evidence of its efforts to mitigate its damages for Wilmington Plantation's breach of warranty and contract claims against Debtor. Given the background without addressing the success of the mitigation efforts, at this point, I deny Debtor's summary judgment motion for Wilmington Plantation's purported failure to mitigate its damages.

**Breach of Representations and Warranties in the PSA and Warranty Deed/Waiver/Caveat Emptor.**

Having determined that there is ambiguity in ¶12 of the 2006 Consent Order, and viewing the language in light most favorable to Wilmington Plantation, I address Wilmington Plantation's breach of representations and warranties in the PSA and the Warranty Deed. Wilmington Plantation and Debtor assert competing summary judgment claims on the issue of breach of representations and warranties in the terms of the PSA and breach of warranty of title. Wilmington Plantation argues Debtor failed to convey marketable title as required under the PSA and Warranty Deed. Conversely, Debtor argues

41

he did not breach the representations and warranties in the PSA or the Warranty Deed as "marketable title" is a defined term in the contract.  Debtor argues further that Wilmington Plantation waived any title objections under the terms of the PSA.

The "cardinal rule of construction is to ascertain the intention of the parties," St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815 (11th Cir. 1999) citing O.C.G.A. § 13-2-3. "Under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive." Lay Bros., Inc. v. Golden Pantry Food Stores, Inc., 616 S.E.2d 160, 164 (Ga. Ct. App. 2005). "If, however, after applying the rules of construction, the intent of the parties continues to be disputed and capable of more than one interpretation, then it is a 'factual matter for resolution by the jury and not a matter of law for determination by the court.'" Id. "An ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and also signifies of doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations." Kammerer Real Estate Holdings, LLC v. PLH Sandy Springs, LLC, 734 S.E.2d 249, 251 (Ga. Ct. App. 2012). After looking at the documents and applying the rules of construction, I

42

find there is ambiguity in the terms of the PSA.

To date, there has been no real analysis provided as to the meaning of the seemingly conflicting provisions of the PSA, and the implication on this case. For example, ¶7(b)(i), (ii) and (iii). In this case, the Sheffer Quiet Title arose after the Effective Date. The PSA is ambiguous on how that is to be treated. Also, in this situation, what constitutes an "objection" is unclear. See also ¶15. In several locations, there also appears to be a scrivener's error in the reference to ¶14 (Warranties, Representations and Additional Covenants of Seller) rather than ¶17 (Remedies). This is relevant to several issues.

Then, at the end of ¶14, Debtor acknowledges and agrees that no examination or investigation of the Property by or on behalf of Wilmington Plantation prior to closing shall in any way effect Debtor's obligations under the representations, warranties and agreements set forth in the PSA.

Also, the intended implications of the indemnity ¶18 are unclear. The interplay between paragraphs 7 and 18 is unclear and creates ambiguity.

These ambiguities carry over into the analysis of the breach of Warranty Deed claims, as all provisions of the PSA survive closing. For these reasons, I find neither Debtor nor Wilmington

43

Plantation is entitled to summary judgment on their respective waiver, breach of contract or breach of the Warranty Deed claims.

### O.C.G.A. §44-3-115

Debtor argues even if he breached the PSA or warranty deed, any errors in the reservation of the building pads, were cured by the 2006 Consent Order pursuant to the procedures set forth in O.C.G.A. §44-3-115 which states:

> The provisions of this article and of condominium instruments recorded pursuant thereto shall be liberally construed in favor of the valid establishment of a condominium pursuant to this article with respect to the submitted property. Substantial compliance with the requirements of this article for the establishment of a condominium shall suffice to bring property described in condominium instruments recorded pursuant to this article within the purview and application of this article; **and any defects in such instruments or want of conformity with this article may be cured by an amendment thereto duly executed by the association and recorded or, upon application of any unit owner, with notice to the declarant, the association, and all other unit owners, by decree of the court.**

O.C.G.A. §44-3-115 (emphasis added).

Debtor argues the recorded Declaration substantially complies with all the material provisions of the Georgia Condominium Act with the possible exception of the placing a metes and bounds description on the plat for the nine building pads. There is no dispute that the intent of the Declarant at the time of the

44

formation was for the nine building pads to be constructed in the future. Numerous units were sold to unit holders and their respective mortgages after Debtor purportedly submitted the entire 19.846 acres into the condominium regime. Accompanying deeds were duly recorded. All this occurred prior to the attempted transfer of the Land to Debtor.

Debtor argues any defect caused by the omission of the metes and bounds description of these building pads can be cured pursuant to §115 by decree of the court by an amendment to the Declaration and after proper notice. Debtor also argues this is precisely the effect of the 2006 Consent Order.

Conversely, Wilmington Plantation argues this section only pertains to technical defects in the creation of a condominium, it cannot be used to take property away from unit owners, or dilute the ownership percentages. Wilmington Plantation contends the omission of the metes and bounds description is a material defect, not merely technical.

While both sides concede there is no Georgia case law on O.C.G.A. §44-3-115, there are some cases from other jurisdictions with similar statutory language. Debtor points to similar code provisions in Alabama and North Carolina. See Code of Ala. §35-8A-203(d) and N.C. Gen. Stat 47C-2-103. The Alabama statute provides:

45

> Title to a unit and common elements is not rendered unmarketable or otherwise affected by reason of an insubstantial failure of the declaration to comply with this chapter. The determination of whether a substantial failure impairs marketability is not governed by this chapter.

Code of Ala. §35-8A-203(d). The official comment to the Alabama Code states:

> Other examples of insubstantial defects that might occur include failure of the declaration to include the word "condominium" in the name of the project, as required by section 35-8A-205(1), or failure of the plats and plans to comply satisfactorily with the requirement of section 35-8A-209(a) that they be "clear and legible," so long as they can at least be deciphered by persons with proper expertise.

Code of Ala. §35-8A-203(d) cmt. 4 (emphasis added).

Debtor points to this language in the comments to the Alabama Code and argues that the requirement of metes and bounds on the Plat is similar to the failure of the plat to be clear and legible. Debtor contends that the engineering firm of Thomas & Hutton was able to draw the appropriate metes and bounds from the 2002 Plat without conducting a field test. Wilmington Plantation disagrees. The portion of the deposition of Wright C. Powers, Jr. from Thomas & Hutton does not resolve this factual issue. Dckt. No. 508, Ex. A. The materiality of the defect is critical to the determination of whether §115 can be used to "cure" these purported

46

defects, and to the underlying breach of contract and warranty claims. Therefore, I find a material question of fact remains and Debtor's summary judgment motion is denied on this issue.

For the foregoing reasons, the parties' cross summary judgment motions are ORDERED DENIED.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this _____ 16th _____ day of January 2013.

47